Scott E. Shaffman, S.B.# 90276
98 Del Monte Ave., Suite 200
Monterey, CA 93940
(831) 333-0321

Attorney for Plaintiff,
MANDAKINI D. PATEL, M.D.

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT

OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| MANDAKINI D. PATEL, M.D.<br><br>Plaintiff,<br>vs.<br><br>NEW YORK<br>LIFE INSURANCE COMPANY<br><br>Defendant. | CASE NO.<br><br>**COMPLAINT FOR<br>BREACH OF CONTRACT<br>AND BAD FAITH;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MANDAKINI D. PATEL, M.D. alleges:

## JURISDICTION

1. Plaintiff MANDAKINI D. PATEL, M.D. is an individual residing in Santa Clara County, California; at all times herein mentioned she was and is a licensed California physician with the specialty of Pediatrician.

2. Defendant NEW YORK LIFE INSURANCE COMPANY (hereinafter, "NY LIFE") is a corporation doing business in the State of California as an insurer, with a principal place of business in the State of New York.

3. The amount in controversy exceeds $75,000.

COMPLAINT                                                                      1

4. This court therefor has diversity jurisdiction under 28 USC 1332.

### INTRADISTRICT ASSIGNMENT

5. Plaintiff's insurance policy herein was purchased in Santa Clara County, California, where she lived when this claim arose and was denied; thus a substantial part of the events which gave rise to this claim occurred in Santa Clara County.

6. Accordingly, this case should be assigned to the San Jose Division of the USDC for the Northern District of California, under Civil Local Rule 3-2(c).

### First Cause of Action
### BREACH OF CONTRACT

7. On or about December 5, 2018, plaintiff was insured under a long term disability income policy underwritten by defendant NY LIFE, Policy #G-30634-0, Certificate # 9500143053.

8. The policy is an individual policy, purchased through AMA Insurance Agency, a subsidiary of the American Medical Association and is an AMA-sponsored Long Term Disability Income Plan..

9. At all times herein mentioned the policy was in full force and effect; plaintiff had paid her policy premiums in full, and otherwise performed all obligations under the policy.

10. On or about November 5, 2018 plaintiff suffered a covered loss when she became disabled under the terms of the policy.

11. Plaintiff made timely notice of claim to defendants on or about March 24, 2019, claim # 9716102380.

12. The insurance policy had a 60 day waiting period before benefits were payable.

13. NY LIFE denied plaintiff's claim on or about May 8, 2019.

14. Plaintiff appealed the denial on or about May 21, 2019.

15. The appeal was denied on June 3, 2019.

COMPLAINT 2

16. As a direct result of said breach by said defendants plaintiff has suffered a loss in an amount to be proved at trial, calculated at $8000 per month, with a maximum benefit period of 60 months; plaintiff's disability is permanent and total policy benefits payable are $480,000.

## Second Cause of Action

## BAD FAITH

17. The insurance policy issued by defendants contained, by law, an implied covenant of good faith and fair dealing; defendants breached the implied covenant of good faith and fair dealing by numerous acts and omissions including but not limited to:

    a. Failing to adequately and fairly investigate the claim before denial;

    b. Misrepresenting the terms and conditions of the policy and pertinent facts;

    c. Misrepresenting the coverage required under California law.

18. The NY LIFE disability policy at issue included a definition of "Covered Total Disability" which was contrary to, and more restrictive than, the definition of "Total Disability" under California law.

19. NY LIFE was well aware that the policy definition of total disability in the policy was contrary to that allowed by California law, as the policy included a Group Insurance Certificate Rider entitled "California Regulations" which expressly applies to California residents and provides a different definition of "Covered Total Disability" from the one provided in the general Policy.

20. However, in its denial letter and in the letter denying plaintiff's appeal, defendant NY LIFE quoted and relied on the definition of total disability in the main policy document, without referencing or applying the revised definition for California residents as stated in the Rider.

21. The denials quoted and relied on language in the main policy document that requires an insured to be "completely and continuously prevented from doing the material and substantial duties of your Regular Occupation" and interpreted that language to mean that if plaintiff was performing any of her duties, even on a part-time basis, she was not eligible for any benefits at all.

COMPLAINT                                           3

22. Plaintiff informed defendant that she was unable to perform all the material and substantial duties of her occupation, but was able to perform some of the duties approximately 6-12 hours per week, with multiple periods in which she was unable to work at all and in which she was absent from her practice for periods of 9 days, 27 days, 29 days and 16 days.

23. Defendant NY LIFE took the position that the policy definition meant that she must be unable to do any work at all for a period of more than 60 continuous days before becoming eligible for any benefits under the policy, and based its denials on that interpretation.

24. In fact, California law does not require a claimant to be unable to perform any duties at all in order to become eligible to receive benefits under a disability insurance policy.

25. The essential difference between the main policy and the Rider was that the main policy required an incapacity:

"that completely and continuously prevents the INSURED PERSON from doing the material and substantial duties of his or her Regular Occupation",

whereas the Rider conforms more closely with California law by stating it must be an incapacity that:

"completely and continuously prevents the INSURED PERSON from *performing with reasonable continuity* the material and substantial acts necessary to perform his or her Regular Occupation *in the usual and customary way...*" (Emphasis added.)

26. California law defines "total disability" as "unable to perform the substantial and material duties of one's own occupation in the usual and customary way with reasonable continuity" but does not include the "completely and continuously prevents . . ." language which is included in NY LIFE's California Rider.

COMPLAINT         4

27. The "completely and continuously" language, at least as interpreted by NY LIFE, conflicts with California law in that "completely and continuously" is ambiguous, contrary to and contradictory to the "reasonable continuity" and "usual and customary way" language of the Rider, as required by California law.

28. NY Life contends "completely and continuously" means that if the insured can perform any of the material and substantial duties, even in a part time capacity with frequent and sustained periods of less than 60 days when she cannot perform any of the duties at all, she is not eligible for any disability benefits. This interpretation is itself inconsistent with California law, as interpreted by the Ninth Circuit, which holds that an insured may be able to perform some of her duties, and still be "totally disabled."

29. As a result of defendant's "bad faith" conduct in denying her claim, plaintiff has suffered and continues to suffer emotional distress.

30. Defendant's conduct in (1) failing to adequately and fairly investigate the claim before denial; (2) misrepresenting to its insured the applicable terms and conditions of the policy and pertinent facts; and (3) misrepresenting the coverage provision required under California law, was despicable, and subjected plaintiff to cruel and unjust hardship, in conscious disregard of her rights under the policy and the law; defendants misrepresented material facts with the intent to deprive plaintiff of her rights and property; said conduct was part and parcel of a widespread and ongoing pattern and practice; said conduct justifies an award of punitive damages, in an amount calculated to punish defendants, and by way of example, said amount to be determined at trial and according to proof.

WHEREFOR, Plaintiff prays Judgment against defendant NEW YORK LIFE INSURANCE COMPANY as follows:

1. For special damages of $8000 per month, for 60 months, a total of $480,000.

2. For interest on unpaid benefits, at the legal rate

3. For attorneys fees expended in obtaining policy benefits.

COMPLAINT                                                   5

4. Damages for emotional distress, in an amount according to proof.

5. For punitive damages.

6. For costs of suit herein.

7. For such other relief as the court deems proper.

Dated: 8/23/19

SCOTT E. SHAFFMAN, Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands jury trial in this matter.

Dated: 8/23/19

SCOTT E. SHAFFMAN, Attorney for Plaintiff

COMPLAINT                                          6